ANDREW ANDERSON, Respondent, v. ALFRED R. ANDERSON, Appellant.

| 24  497 |
| s25  164 |

No. 1356. (68 Pac. 319).

1. Partnership: Accounting: Agreement of Settlement Burden of Proof: Evidence.

A written agreement settling the accounts of a partnership is prima facie a bar to suit for an accounting, casting upon plaintiff the burden of showing conclusively that he signed the agreement in excusable ignorance of the fact that it contained a settlement of the firm affairs.[1]

4. Same.

Plaintiff,. in an action for a partnership accounting, testified that he did not know that the instrument set up by the answer as a bar to the action contained a full settlement of the accounts, that his knowledge of English was imperfect, and that he was very deaf, and did not hear that anything was said about the partnership accounts. He had his attorney with him. There was evidence that the agreement was read over to him, and that

---

[1]Roach v. Gilmer, 3 Utah 389, 4 Pac. 221.

24 Utah—32

he understood it; that he suggested making the agreement, and expressed his satisfaction that the partnership accounts were settled. *Held*, that the court erred in disregarding the agreement and rendering a judgment for an accounting.

2. **Same: Reply: When Proper.**

Under Revised Statutes 1898, section 2980, authorizing plaintiff to reply or demur to a counterclaim set up in the answer, plaintiff, in a suit for a partnership accounting, can not reply to the answer setting up an agreement settling the partnership accounts, by, in effect, alleging that he had no knowledge that the instrument referred to contained such an agreement, and plaintiff can only attack the agreement by obtaining leave to amend his complaint.

3. **Same: In Absence of Objections Issues Raised will be Considered.**

Where no objection was taken to a reply improperly made, nor to the evidence supporting its allegations, the court will pass upon the sufficiency of the evidence to support the findings sustaining the reply.

(Decided April 1, 1902.   Rehearing granted April 25, 1902.)

Appeal from the Fourth District Court, Uintah County.— *Hon. J. E. Booth*, Judge.

Action for an accounting and final settlement of a partnership.   From a judgment in favor of the plaintiff, the defendant appealed.

REVERSED.

*W. H. Frye, Esq.*, and *Mesers. Rawlins, Thurman, Hurd & Wedgwood* for appellant.

The execution and delivery of the deed having been established, the burden was on the plaintiff to impeach its validity, and by the great weight of authority this could only be done by evidence beyond a reasonable doubt; a mere preponderance is not sufficient.   Cox v. Woods, 67 Cal. 317; Nevius v. Dunlap, 33 N. Y. 680; Story's Equity Jurisprudence, 157;

Atlantic Delaine Co. v. James, 94 U. S. 214; Robertson v. Smith, 60 Am. Dec. 236; Luddington v. Ford, 33 Mich. 122; Shepherd v. Shepherd, 36 Mich. 173; Vary v. Shea, 36 Mich. 388; Youell v. Allen, 18 Mich. 107; Climer v. Hovey, 15 Mich. 18; Stockbridge Iron Co. v. Hudson Iron Co., 102 Mass. 45; Tripp v. Hasceig, 20 Mich. 254.

Under the great weight of authority the plaintiff should have put the defendant in *statu quo*, and failing to do so he was not entitled to the relief sought, even though his claim in other respects was meritorious and well founded. Grymes v. Sanders et al., 93 U. S. 55; Reggen v. Green, 3 Am. Rep. 77; Buena Vista Fruit & Vineyard Co. v. Tuohy et al., 107 Cal. 243; Kelly v. Owen, 120 Cal. 502; Town of Venice v. Woodruff, 20 Am. Rep. 495; Chippen v. Hope, 20 Mich. 344; 18 Ency. of Pleading and Practice, 829.

*L. R. Rhodes, Esq.*, and *Messrs. King, Burton & King* for respondent.

BASKIN, J.—It is alleged in the complaint: "That in the year 1882, at Uintah county, Utah, plaintiff and defendant entered into a partnership, by the terms of which they were to enter into all kinds of available business, and were to share and share alike all gains and losses; that plaintiff contributed property, naming it, of the value of twenty-seven hundred and fifty dollars, and defendant of the value of five hundred and thirty-five dollars; that each of the parties was to contribute his time and labors to the benefit of the partnership, and the property acquired was to be owned jointly; that the business of the partnership was entered upon and carried on until about the sixteenth day of April, 1898." It is, in substance, further alleged that during that period of time property of considerable value, consisting of real estate, shares of stock, horses, and cattle, was acquired by the firm, but the title thereto is in the name of the defendant, who holds the same

for the joint benefit of both members, and that the defendant, about the sixteenth day of April, 1898, refused to transact any business with plaintiff, and asserted they were no longer partners, and refused to have any settlement with plaintiff of their partnership affairs, and still so refuses, and claims complete ownership of said property. The prayer is for the settlement of the partnership affairs by an accounting and the conveyance of one-half of the joint property to plaintiff. The answer, after making certain denials which it is not necessary to specify, denied "that said partnership continued until the sixteenth day of April, 1898, and alleged that said partnership was dissolved, and its affairs settled and adjusted by mutual consent of the parties, on the first day of January, 1895, and that at said time a notice of the dissolution of said partnership, signed by each of the parties, was published in the Vernal Express; ... that, in order to humor and gratify plaintiff, defendant submitted to and entered into a further and additional settlement and satisfaction between plaintiff and defendant on the thirteenth day of August, 1898, said settlement being in writing, and by the terms of which the plaintiff and his wife conveyed to the defendant the forty acres of land in section twenty-three, township four south, range twenty-one east, and the defendant and wife conveyed to plaintiff the north half of lot two, block fifteen, Vernal, and transferred to him ten shares of stock in the Western Loan and Savings Company, valued at eight hundred and fifty dollars, and the said plaintiff acknowledged full settlement and payment for all partnership interests theretofore existing between plaintiff and defendant, including all real and personal property acquired by said partnership." The prayer asked "that plaintiff take nothing by this action, and that defendant recover his costs." The plaintiff filed a reply to the answer, in which he admitted that he signed the writing referred to in defendant's answer, and, in substance, alleged that at the time he signed the same he was seventy years of age; that he spoke and understood the Eng-

lish language very imperfectly; that he could not read English, and was very deaf; that he had no knowledge or information that said instrument contained any agreement to a settlement of his partnership affairs with defendant, and that he did not know nor was he informed that said deed contained any other agreement, or contract, other than that of a quitclaim conveyance to said land to be conveyed to said defendant; that he never authorized Hardin Bennion, who prepared the deed. or any one, to deliver said writing to the defendant; and that there never had been any settlement between plaintiff and defendant upon which the agreement set out in defendant's answer could be based.   The prayer of the reply was for the relief demanded in the complaint, and that said agreement be declared null and void.   The portion of the written agreement of settlement referred to in the answer and reply which is pertinent is as follows: _ "This indenture, made the thirteenth day of August, in the year of our Lord one thousand eight hundred and ninety-eight, between Andrew Anderson and Lena K. Anderson, his wife, of Vernal, county of Uintah, and State of Utah, the parties of the first part, and Alfred R. Anderson, of the city, county, and State aforesaid, the parties of the second part, witnesseth:   That the said parties of the first part, for and in consideration of the sum of one dollar and other valuable considerations, lawful money of the United States of America, to them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, do by these presents remise, release, and forever quitclaim unto the said party of the second part, and to his heirs and assigns, all that certain lot, piece, or parcel of land, situated in Vernal, county of Uintah, and State of Utah, bounded and described as follows, to-wit:   All of the northwest quarter of the northwest quarter of section 23, in township 4 south, of range 21 east, of the Salt Lake meridian, containing forty acres, more or less. And, in consideration of the sum of seventeen hundred and fifty dollars heretofore paid to said first parties by the said sec-

ond party, receipt of which is hereby acknowledged, and in consideration of the transfer to said Andrew Anderson by said second party of the north half of lot 2, of block 15, of the original Vernal survey, and of ten shares of stock in the Western Loan & Savings Company, valued at $850, the receipt of which is hereby acknowledged, the said first parties hereby acknowledge full settlement and payment of all partnership interests heretofore existing between first and second parties hereto, including all real and personal property acquired by said partnership." It is conceded, and the evidence shows, that the partnership referred to in the provisions quoted is the one in regard to which an accounting was sought by plaintiff.

The plaintiff having admitted that he signed the agreement, it is prima facie a bar to the action, and the burden was on the plaintiff to conclusively show that he signed the same in excusable ignorance of the fact that it embraced a full settlement of the partnership affairs, and an accounting could only have been rightfully allowed after the trial court, upon such showing, had set the agreement aside. The only action touching the agreement disclosed by the record is the following findings: "That said copartnership continued and existed until the first day of January, 1895; that after the partnership had ended the parties hereto made a partial settlement of the affairs of said co-partnership, by means of which certain deeds passed between the plaintiff and defendant; that under said partial settlement the defendant should have paid to the plaintiff the sum of one thousand dollars; that six hundred and fifty dollars of said amount was not paid by defendant to plaintiff. That plaintiff should have and recover six hundred and fifty dollars, with interest thereon at eight per cent per annum from August 8, 1898, amounting to one hundred and thirty-four and fifty-hundredths dollars on the twelfth day of March, 1901." The decree awarded to the plaintiff $1,539.05. Among the exceptions taken to these findings were the following: "The court erred in making said

findings, in this: That the evidence shows that said settlement was a full and complete settlement of all the partnership affairs of the plaintiff and defendant, and was made deliberately by the parties; that the deeds referred to were made by the parties, and especially by the plaintiff, as well as the defendant, in contemplation of the same being a full and complete settlement of the partnership affairs. The court erred in rendering any finding whatever to the effect that any balance, sum or amount was due plaintiff on account of said partnership, for the reason that said findings, and all of them, are contrary to the evidence, and contrary to law ... that the said deeds, conveyances, and transfers were made, executed, and the instruments delivered by said parties, according to the terms of said agreement, and the consideration of said transfers and conveyances, among other things, as expressed in the deed of settlement, was the release of all demands and claims by plaintiff against the defendant on account of said partnership business, and the full and complete settlement of all of said partnership affairs; that said agreement and deed were introduced in evidence, and were in no manner impeached, and all of said findings are contrary to the terms of said deed of settlement, and the evidence relating thereto and connected therewith."

A reply is not permissible under the Code of Civil Procedure, except when the answer contains a counterclaim. Section 2980, Rev. St. 1898. The written agreement of final settlement was pleaded by the defendant in bar of the action, and, as the plaintiff admitted its execution, it prima facie barred the action, and the full settlement evidenced thereby could only be avoided by a direct proceeding to cancel or reform the writing upon the ground of fraud or mistake. Roach v. Gilmer, 3 Utah 389, 4 Pac. 221; Bullock v. Boyd, 2 Edw. Ch. 294. The plaintiff in place of attacking the agreement in a reply, should have obtained leave to amend his complaint. Weed v. Smull, 7 Paige 573; Langerberg v. Schmidt, 69 Mo. App. 279.

However, as on the trial of the case no objection was made to the reply, and evidence without objection was introduced touching the allegations of the reply, we will pass upon the question whether, under the facts disclosed by the record, the trial court erred in disregarding the written agreement of settlement and rendering judgment for the plaintiff. The reply does not allege that the agreement was obtained through any collusion, misrepresentations, or fraud, or that the plaintiff, when he signed the same, was incapacitated by age from transacting the business in hand, or binding himself by such an agreement. Therefore the only plausible grounds for avoiding the agreement alleged in the reply are that the plaintiff had a very imperfect understanding of, and could not read, the English language; that he was very deaf, and did not know, and was not informed, that the instrument which he signed contained any other agreement than a conveyance of said land. Nor does the plaintiff offer to return to the defendant what was received by him.. While "courts of equity will grant relief for ignorance as well as for mistake of fact, yet, when the party has acted in ignorance of fact merely, courts of equity will never afford relief where actual knowledge could have been obtained by the exercise of due diligence and inquiry." McDaniels v. Bank, 29 Vt. 233-238, 70 Am. Dec. 406; Penny v. Martin, 4 Johns. Ch. 567; 1 Beach, Mod. Eq. Jur., sec. 51. Ignorance of fact and mistake of fact, while not precisely the same, are generally treated as equivalents. Id., sec. 48. In cases of mutual mistake, the remedy is rectification;. in cases of unilateral mistake, the remedy is rescission of the contract. Id., sec. 51. In the case at bar the plaintiff did not act alone in the matter, but called to his assistance E. S. De Friez, an attorney at law, who participated in the negotiations and was present when the agreement was signed. The plaintiff, therefore, had ample opportunity to inform himself of the provisions contained in the agreement, and if he failed to do so

it was because he neglected to exercise due diligence and make inquiry. Neither was the agreement rescinded by the decree. The only evidence tending to show the alleged ignorance was the statements upon the witness stand by the plaintiff himself. He testified as follows: "When I signed the deed before Bennion, he read it to me, but I couldn't hear nothing more than I signed a deed for my home; he told me that. I did not understand or hear him read that there was anything in there that settled the partnership. I didn't know that was in there; I know that was in the Bishop's trial. When he read the deed I didn't understand no more than he told me. When I signed the agreement in the Bishop's court, Bennion and Brother Anderson were present; also De Friez, John Palmer, my daughter, his wife, and Lizzie. . . . Mr. Bennion read over the agreement to me before I signed it, but I couldn't hear it. I did not tell I couldn't hear it; he told me I wanted to sign my name on that here." Hardin Bennion testified that he was authorized by the plaintiff and defendant to make out the deeds; that he made them out in accordance with what he understood to be the agreement of the parties; that he was to make and deliver the deeds to both parties when completed, and that he did so, but submitted them to the plaintiff and Mr. Davis before they were delivered; that before the plaintiff signed the deed in question he read it to him, and he understood its purpose and what it meant. A. B. Anderson, in surrebuttal, testified as follows: "I was there when the agreement was made. I heard it read over. De Friez was there when it was framed, but it had not been signed by all three when he left. While the agreement was being read over, I know the plaintiff sat there and listened and nodded his head and said, 'Yes.'" The defendant testified as follows: "The last agreement was at my father's suggestion. Mr. De Friez appeared to represent him. After the agreement was made, he said he was well satisfied; he had got what he wanted now. He proposed the matter that was afterwards put in writing,

in the presence of John M. Davis, A. B. Anderson, and Hardin Bennion. I was there, and Mr. and Mrs. John Palmer, and my wife and mother and oldest son. Mr. De Friez was also there. It took place in Mr. Bennion's house in Vernal, in August, 1898. These people assembled together on request of my father that we should have a settlement." Several witnesses testified that plaintiff, shortly after he signed the deed, stated to them that he had settled with his son, and was gratified that he had done so. Under the evidence and the law applicable to the case, we are of the opinion that the trial court erred.

The decree is reversed, with costs, and the cause remanded for a new trial, and that permission be granted to amend the pleadings.

MINER, C. J., and BARTCH, J., concur.